**SLIP OP. 07-141**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| TROPICANA PRODUCTS, INC.,  :  | |
| : | |
| Plaintiff, : | |
| : | |
| and : | |
| : | |
| LOUIS DREYFUS CITRUS, INC., and : | |
| FISCHER S/A AGROINDUSTRIA, : | |
| : | |
| Plaintiff-Intervenors, : | |
| : | |
| v.  :  | Before: Jane A. Restani, Chief Judge |
| : | |
| UNITED STATES,  :  | Court No. 06-00109 |
| : | |
| Defendant, : | |
| : | |
| and : | |
| : | |
| A. DUDA & SONS, INC., CITRUS : | |
| WORLD, INC., FLORIDA CITRUS MUTUAL, : | |
| SOUTHERN GARDENS CITRUS : | |
| PROCESSING CORP., and THE COCA-COLA : | |
| COMPANY, : | |
| : | |
| Defendant-Intervenors. : | |

OPINION

[Defendant United States' determination of material injury by reason of subject imports REMANDED.]

Dated: September 19, 2007

   Neville Peterson, LLP (John M. Peterson, Catherine C. Chen, George W. Thompson, and Michael K. Tomenga) for the plaintiff.

   Vinson & Elkins, LLP (Christopher A. Dunn and Valerie S. Ellis) for the plaintiff-intervenor Louis Dreyfus Citrus, Inc.

      Kalik Lewin (Robert G. Kalik and Brenna S. Lenchak) for the plaintiff-intervenor Fischer S/A Agroindustria.

      Peter D. Keisler, Assistant Attorney General; Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Michael J. Dierberg), for the defendant.

      James M. Lyons, General Counsel, U.S. International Trade Commission (David A.J. Goldfine and Andrea C. Casson) for the defendant.

      Barnes, Richardson & Colburn (Stephen W. Brophy) for defendant-intervenor A. Duda & Sons, Inc., Citrus World, Inc., Florida Citrus Mutual, and Southern Gardens Citrus Processing Corp.

      Crowell & Moring, LLP (Jeffrey L. Snyder and Alexander H. Schaefer) for the defendant-intervenor the Coca-Cola Company.


      Restani, Chief Judge: This matter arises from Plaintiff Tropicana Products, Inc.'s ("Tropicana") challenge to the International Trade Commission's ("Commission") determination that an industry in the United States producing conventional and organic frozen concentrated orange juice for further manufacturing ("FCOJM") and conventional and organic not-from-concentrate orange juice ("NFC") (collectively "certain orange juice") is materially injured by reason of imports of certain orange juice from Brazil.[1] Following parties' cross-motions for judgment on the agency record, the court remanded for the Commission to reconsider its determination. See Tropicana Prods., Inc. v. United States, 484 F. Supp. 2d 1330, 1353–54 (CIT 2007) ("Tropicana I"). On remand, the Commission again found that the domestic orange juice

---

[1] Fischer S/A Agroindustria ("Fischer") and Louis Dreyfus Citrus, Inc. ("Dreyfus") join the action as Plaintiff-Intervenors. A. Duda & Sons, Inc., Citrus World, Inc., Florida Citrus Mutual, Southern Gardens Citrus Processing Corp., and the Coca-Cola Company join as Defendant-Intervenors.

COURT NO. 06-00109                                                                                           PAGE 3

industry is materially injured by reason of imports of certain orange juice from Brazil.  See Certain Orange Juice from Brazil, USITC Pub. 3930, Inv. No. 731-TA-1089 (June 2007), List 1, P.R. Doc. 371R ("Remand Determination").

**BACKGROUND**

This matter began on December 27, 2004, when several domestic producers of certain orange juice[2] filed a petition with the Commission and the Department of Commerce ("Commerce"), claiming that an industry in the United States was materially injured, or threatened with material injury, by reason of imports of certain orange juice from Brazil. Commerce instituted an antidumping duty investigation and found that certain orange juice from Brazil was being sold at less then fair value ("LTFV"). Certain Orange Juice from Brazil, 71 Fed. Reg. 2183 (Dep't Commerce Jan. 13, 2006) (notice of final determination of sales at less than fair value and affirmative final determination of critical circumstances).  Thereafter, the Commission gave its final determination to Commerce.

After examining data from crop year ("CY") 2001/02 through CY 2004/05, the Commission determined that the domestic industry producing certain orange juice is being injured by reason of imports of certain orange juice from Brazil.  Tropicana appealed and the court remanded the decision to the Commission.  See Tropicana I, 484 F. Supp. 2d at 1353–54. The court found that the Commission "did not examine all of the significant issues relating to the shortfall in domestic production of certain orange juice, the opposition of certain domestic

---

[2] The petitioners were Florida Citrus Mutual, A. Duda & Sons, Inc., Citrus World, Inc., Peace River Citrus Products, Inc., and Southern Garden Citrus Processing Corp.  Certain Orange Juice from Brazil–Staff Report, Inv. No. 731-TA-1089 (Jan. 27, 2005), at I-1, List No. 1, P.R. Doc. 329 ("Final Staff Report").

orange juice processors to the petition, or the impact of non-subject imports." Id. at 1343. The court instructed the Commission to consider on remand: "the full effects of a shortage in the supply of domestic round oranges, and how that affects the Commission's volume and price effects analysis"; "the opposition to the petition by a large portion of the domestic industry; [and,] whether, if prices were adjusted to account for the LTFV margin, non-subject imports would displace subject imports." Id. at 1353. "Given the relatedness of the issues," the court also asked the Commission to "consider the totality of the evidence anew." Id.

Upon remand, the Commission reconsidered each issue and determined that the domestic orange juice industry is materially injured by reason of imports of certain orange juice from Brazil.[3] Remand Determination, at 1. Tropicana contests the Commission's determination, arguing that the Commission did not properly consider each issue as instructed by the court.

The court has reviewed the Commission's remand determination and found at least two significant flaws – the Commission did not properly examine the inverse correlation between domestic production and subject imports, and the Commission did not conduct a proper analysis of the impact of non-subject imports. The Commission should address these issues before the court proceeds further in this case.

---

[3]Six commissioners participated in this remand determination. Remand Determination, at 1 n.2, n.4. Three Commissioners (Vice Chairman Aranoff and Commissioners Lane and Pinkert) reached an affirmative determination while three Commissioners (Chairman Pearson and Commissioners Okun and Williamson) reached a negative determination. Remand Determination, at 1 n.5. Pursuant to 19 U.S.C. § 1677(11) (2000), a tie vote is resolved in favor of an affirmative determination.

**STANDARD OF REVIEW**

The court will uphold the Commission's final determination in an antidumping duty investigation unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

**DISCUSSION**

As stated in Tropicana I, to make an affirmative determination, "the Commission must find: (1) a 'present material injury or a threat thereof,' and (2) causation of such harm by reason of subject imports." Tropicana I, 484 F. Supp. 2d at 1333 (quoting Hynix Semiconductor, Inc. v. United States, 431 F. Supp. 2d 1302, 1306 (CIT 2006)). The Commission must show both that "the harm suffered by the domestic industry is 'not inconsequential, immaterial, or unimportant,'" Tropicana I, 484 F. Supp. 2d at 1342 (quoting 19 U.S.C. § 1677(7)(A)), and that there exists a "causal – not merely temporal – connection between the [subject imports] and the material injury." Gerald Metals, Inc. v. United States, 132 F.3d 716, 720 (Fed. Cir. 1997). It "must analyze contradictory evidence or evidence from which conflicting inferences could be drawn, to ensure that the subject imports are causing the injury . . . ." Taiwan Semiconductor Indus. Ass'n v. ITC, 266 F.3d 1339, 1345 (Fed. Cir. 2001) (citations and quotation marks omitted)).

Further, the Commission must consider three factors in conducting its determination: "(I) the volume of imports of the subject merchandise, (II) the effect of imports of that merchandise on prices . . . for domestic like products, and (III) the impact of imports of such merchandise on domestic producers of domestic like products, but only in the context of production operations in the United States." 19 U.S.C. § 1677(7)(B)(i). The Commission "may

COURT NO. 06-00109                                                                                           PAGE 6

[also] consider such other economic factors as are relevant to the determination . . . ." 19 U.S.C. § 1677(7)(B)(ii).

As stated previously, the Commission has failed to consider properly the inverse correlation between domestic production and subject imports, and the impact of non-subject imports.

**I.    Inverse Correlation Between Domestic Production and Subject Imports**

In Tropicana I, the court noted that subject imports "fluctuated from year to year, increasing when domestic production was higher and decreasing when domestic production was lower."[4]  Tropicana I, 484 F. Supp. 2d at 1344.  The court remarked that this correlation may be "explained by the need of the domestic producers of certain orange juice [to] maintain relatively large bulk juice inventories to ensure their supply of certain orange juice during fluctuations in domestic production," and instructed the Commission to examine the issue.  Id. at 1345–46 (citation and quotation marks omitted).

On remand, the Commission found that "[t]o the extent there is an inverse correlation between domestic production and subject imports, . . . the magnitude of any such correlation is questionable on this record" given that "[s]ubject import volumes were virtually identical in two crop years when domestic production levels varied substantially." Remand Determination, at 8–9 n.47.  The Commission stated that in CY 2002/03, subject imports totaled

---

[4]Likewise, "the level of subject imports held in domestic inventory was inversely correlated to the level of production of the domestic like product – rising when production levels fell and vice-versa." Tropicana I, 484 F. Supp. 2d at 1345.

COURT NO. 06-00109                                                                                          PAGE 7

227.3 million gallons SSE,[5] while domestic production totaled 203 million gallons SSE, and that in CY 2004/05, subject imports totaled 231.7 million gallons SSE, while domestic production totaled 149.6 million gallons SSE. Id. at 9 n.47.

       The court, however, is uncertain how the Commission obtained its data regarding domestic production. The table to which the Commission cites does not provide the domestic production values that the Commission states in its remand determination. See Final Staff Report, at Table C-3. Instead of stating that domestic production was 203 million gallons SSE in CY 2002/03 and 149.6 million gallons SSE in CY 2004/05, the table to which the Commission cites provides that domestic production was 1.23 billion pounds in CY 2002/03 and .97 billion pounds in CY 2004/05. Id. It is unclear whether the Commission had converted the figures listed in the table from pounds to gallons SSE and if so, whether the Commission had used a proper conversion rate.

       Further, if domestic production levels and subject import volumes are compared using data expressing the values in the same unit of measurement, gallons SSE, the inverse correlation between the two figures becomes readily apparent. As stated in Tropicana I,

> The domestic production of certain orange juice decreased from approximately 1.432 billion gallons SSE in CY 2001/02 to 1.246 billion gallons SSE in CY 2002/03 before increasing to 1.471 billion gallons SSE in CY 2003/04 and then decreasing significantly to 1.006 billion gallons SSE in CY 2004/05. Final Staff Report, at Table IV-6. Meanwhile, the volume of subject imports increased from 109.7 million gallons SSE in CY 2001/02 to 227.3 million gallons SSE in CY 2002/03, then decreased to 154.2 million gallons SSE in CY 2003/04 before rising again to 231.7 million gallons SSE in CY 2004/05. Final Determination, at 17 n.133.

---

     [5]Single strength equivalent ("SSE") gallons are a standard volume measurement for ready-to-drink orange juice. Final Determination, at 17 n.132.

Tropicana I, 484 F. Supp. 2d at 1343 n.20.  As seen from these data, the volume of subject imports increases when domestic production decreases and vice versa.  As previously stated, this strong correlation may be "explained by the need of the 'domestic producers of certain orange juice [to] maintain relatively large bulk juice inventories' to ensure their supply of certain orange juice during fluctuations in domestic production."  Tropicana I, 484 F. Supp. 2d at 1345 (quoting Final Determination, at 15.)

      The Commission, however, did not provide a sustainable analysis of this issue but instead dismissed the magnitude of this correlation by referring to unexplained data.  Thus, the court remands this issue for the Commission to consider again.

**II.     Non-Subject Imports**

      The court also instructed the Commission to consider whether it would have to analyze the effect of non-subject imports on the domestic industry as required by Gerald Metals, 132 F.3d at 720, and Bratsk Aluminium Smelter v. United States, 444 F.3d 1369, 1373 (Fed. Cir. 2006).  As discussed in Tropicana I, in Gerald Metals, the Federal Circuit found that the Commission should have examined whether non-subject imports would have replaced all or a great part of subject imports when non-subject imports were perfect substitutes for subject imports and frequently undersold the domestic like product.  Gerald Metals, 444 F.3d at 718–19.  The Federal Circuit expanded upon this holding in Bratsk, stating that:

> Where commodity products are at issue and fairly traded, price competitive, non-subject imports are in the market, the Commission must explain why the elimination of subject imports would benefit the domestic industry instead of resulting in the non-subject imports' replacement of the subject imports' market share without any beneficial impact on domestic producers.

Bratsk, 444 F.3d at 1373 (emphasis added).  The Federal Circuit required the Commission to

COURT NO. 06-00109                                                                                         PAGE 9

make such an explanation "whenever the antidumping investigation is centered on a commodity product, and price competitive non-subject imports are a significant factor in the market." Id. at 1375. Because the Commission did not make such an inquiry, the court remanded the issue to the Commission.

On remand, the Commission found that the first factor of the test was met as certain orange juice is a "commodity product." Remand Determination, at 18. As to the second factor of the test, the Commission found that "price competitive non-subject imports are not a significant factor in the U.S. market based on the relatively low market share held by such imports." Id. In particular, the Commission noted that the three largest non-subject sources of certain orange juice in the United States did not account for a large percentage of U.S. imports[6] and U.S. apparent consumption in the final year of the POI.[7] Id. at 18–19. The Commission commented that "even

---

[6]"[B]y quantity, non-subject imports comprised 40.8% of total imports in CY 2001/02, 20.8% in CY 2002/03, 29.4% in CY 2003/04, and 34.2% in CY 2004/05." Tropicana I, 484 F. Supp. 2d at 1350. While non-subject imports are not a majority of imports, it is difficult to say that numbers ranging from above 20% to above 40% are not large.

[7]The share of U.S. apparent consumption comprised of non-subject imports and of subject imports is as follows:

(continued...)

at their highest level of 8.0 percent of apparent consumption, non-subject imports' market share was only at the level held by subject imports before the subject imports' surge late in the POI." Id. at 18. The Commission further found that projected exports from non-subject Brazilian producer Citrovita to the U.S. for CY 2005/06 and 2006/07 were modest compared to subject Brazilian producer's projected exports to the U.S. in CY 2005/06 and 2006/07. Id. at 19. Thus, the

---

[7](...continued)

| Crop Year | 2001/02 | 2002/03 | 2003/04 | 2004/05 |
|---|---|---|---|---|
| U.S. Apparent Consumption Comprised of Non-Subject Imports | 5.2% | 4.2% | 4.5% | 8.0% |
| U.S. Apparent Consumption Comprised of Subject Imports | 7.6% | 15.9% | 10.7% | 15.4% |

Remand Determination, at I-11.

The following lists the three largest non-subject import countries' share of U.S. imports (by quantity) and apparent consumption of certain orange juice:

| Crop Year | | 2004/05 |
|---|---|---|
| Mexico | Percentage of U.S. Imports | 15.6% |
| | Percentage of U.S. Apparent Consumption | 3.7% |
| Belize | Percentage of U.S. Imports | 8.6% |
| | Percentage of U.S. Apparent Consumption | 2.0% |
| Costa Rica | Percentage of U.S. Imports | 8.4% |
| | Percentage of U.S. Apparent Consumption | 2.0% |

Id. at I-10–11.

See infra note 8 regarding Brazilian imports.

Commission found that non-subject imports are not a significant factor in the U.S. and did not complete the final step of a Bratsk test.

Although non-subject imports here did comprise a smaller portion of the domestic market during the POI than those at issue in Bratsk, as the court observed previously, they are nevertheless not "an indisputably insignificant factor in the market." Tropicana I, 484 F. Supp. 2d at 1351. Thus, the court required the Commission upon remand to examine this issue. It did so, but did not base its conclusion of insignificance on substantial evidence. Given the existence of an important Brazilian non-subject producer not reflected in the major exporter non-subject import totals[8] and given that the Commission found that the volume of subject imports of other countries comprising between 7.6% to 15.9% of apparent consumption during the POI was significant enough to cause harm, the court cannot accept the Commission's conclusion that the volume of non-subject imports comprising only a slightly smaller percentage of apparent consumption and as much as 40.8% in the first year of the POI of all imports is insignificant. See Remand Determination, at I-10. Further, the volume of such non-subject imports as a share of apparent consumption had surged during the last two years of the POI from 4.5% to 8.0%, suggesting that their presence is increasing. Id. at I-11. Relatedly, such non-subject imports' share of total imports has also increased steadily from the second year of the POI to the last. Id.

---

[8]In its remand determination, the Commission noted that Citrovita, a major Brazilian orange juice producer, was subject to an antidumping duty order during the POI and exported little or no juice to the U.S. during the POI. Remand Determination, at 19. The Commission then examined projected imports from Citrovita but did not examine Citrovita's projected production and whether Citrovita would have exported more to the United States if subject imports had been fairly priced. Id. This does not require the Commission to look into the future, an inquiry to which the Commission objects, so much as to hypothesize as to what the present players, such as Citrovita, would have done in a situation of fair trade.

COURT NO. 06-00109                                                                                          PAGE 12

at I-10. Based on these figures, the court cannot sustain the conclusion that the level of non-subject imports is so insignificant as to relieve the Commission of its obligation to perform a more complete Bratsk analysis.[9]

Furthermore, in this case it may not be particularly difficult, even at this late date, for the Commission to examine whether the non-subject imports here would be able to replace subject imports. Although the Commission is generally obligated to examine the impact of non-subject imports from various sources, the Commission already has much of this information, including projected production figures relating to non-subject Brazilian producer Citrovita, on which Tropicana focuses much concern. See Final Staff Report, at Table VII-7. Given that the Commission has not provided a sufficient reason for its conclusion that non-subject imports are such an insignificant factor in the market that the Bratsk test may be ignored and that the Commission has detailed information regarding one of the primary non-subject producers of concern, the Commission must examine whether non-subject imports would replace subject imports if prices of subject imports reflected fair value. How the Commission chooses to carry out this task under the facts of this case is for it to determine in the first instance.

The Commission has expressed its displeasure with the Bratsk test, but just as the Commission must obey the directions of this Court, this Court must obey the directions of its appellate court.[10] It is not the court's province to reduce the Bratsk test to a simple restatement

---

[9]This is not to say that volume of non-subject imports is unimportant. It must, however, be considered in the context of the complete analysis.

[10]The Bratsk test is not found in the plain words of the statute but, in the view of the Federal Circuit, is necessary to fulfill the intent of the statute. Even the Commission majority

(continued...)

of the causal requirement.  As far as the court can discern, the test requires the Commission to do more than say, "Whatever harm the non-subject imports may have caused or may in the future cause, the subject imports also caused harm or threaten to do so."  The Commissioners in the controlling determination appear to understand that but have decided that on these facts that a complete Bratsk test need not be applied.  For the reasons stated, the court does not agree.

## CONCLUSION

Accordingly, the court remands the affirmative determination to the Commission. The Commission has failed to explain correctly its conclusions as to the inverse correlation between subject imports and domestic production, and has failed to conduct a sufficient Bratsk analysis as required by the circumstances of this case.[11]  The Commission has thirty days to consider these issues again.

      /s/ Jane A. Restani  
      Jane A. Restani  
      Chief Judge

Dated this 19th day of September, 2007.  
New York, New York.

---

[10](...continued) seems to accept that the holding of Bratsk is binding precedent on this Court and on the Commission.  Therefore, the Commission is not free to avoid using the new methodology that the Court of Appeals requires when, as in this investigation, the Commission found that commodity prices are at issue and fairly traded, price competitive, non-subject imports are in the market.

[11]The court accepts the Commission's statement that "in any remand" it considers "the entire record in light of any new findings" it has made.  Remand Determination, at 15–16.

# NOTICE OF ENTRY AND SERVICE

      This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

      Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

      or

      Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

      Tina Potuto Kimble  
      Clerk of the Court

Date: _____    By: _____
                                                                    Deputy Clerk